## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK A. KESSLER,

    Plaintiff,

        v.

BOROUGH OF FRACKVILLE, *et al.*,

    Defendants.

NO. 3:17-CV-2231

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 14) filed by Defendants Borough of Frackville (the "Borough"), Phillip Petrus ("Petrus"), Marvin Livergood ("Livergood"), and William Creasy ("Creasy") (collectively, where appropriate, "Defendants"). Plaintiff Mark Kessler ("Kessler" or "Plaintiff") commenced this action under 42 U.S.C. § 1983 and state law after a jury found him not guilty in state court of harassment in violation of 18 Pa. C.S.A. § 2709(a)(4). Based on the state court prosecution, Kessler contends that Defendants deprived him of his constitutional rights by, *inter alia*, falsely arresting him, maliciously prosecuting him, and destroying/fabricating evidence. Defendants have moved to dismiss Kessler's § 1983 claims for failure to state a claim upon which relief can be granted. Because Kessler pleads plausible Fourth and Fourteenth Amendment claims and it is not clear from the face of the Amended Complaint that individual Defendants are entitled to qualified immunity, the motion to dismiss will be denied.

### I. Background

The facts as alleged in the Amended Complaint are as follows:

On or about August 19, 2015, Creasy, an elected Borough Councilman, verbally harassed and berated Kessler in front of his minor daughter at a grocery store in the

Borough. (*See* Doc. 12, ¶ 33). Kessler believed that Creasy was also harassing his daughter on the internet and making obscene comments about her. (*See id*. at ¶ 34). After Kessler responded and defended himself, Creasy became more irate. (*See id*. at ¶¶ 35-37).

After the incident at the grocery store, Creasy had a meeting with Livergood, a police officer and acting Chief of Police, at the Borough police station. (*See id*. at ¶ 41). Livergood also had previous conflicts with Kessler. (*See id*. at ¶ 42). As a result, Creasy and Livergood approached Petrus, also a police officer, about filing a charge against Kessler. (*See id*. at ¶ 43). Although Petrus knew the charge was false and greatly exaggerated, Petrus filed the charge against Kessler out of loyalty to Creasy and Livergood and fear that he would lose his job. (*See id*. at ¶ 44).

A charge was filed against Kessler on December 8, 2015 for a violation of 18 Pa. C.S.A. § 2709(a)(4). (*See id*. at ¶ 47).[1] Petrus nor Livergood interviewed Kessler prior to the filing of that charge. (*See id*. at ¶ 48).

Video surveillance of the incident was retrieved by Petrus and provided to Livergood. (*See id*. at ¶ 53). That video confirmed that Creasy lied about the events that took place at the grocery store. (*See id*. at ¶ 55). Although Petrus and Livergood claimed that the video surveillance footage was given to the District Attorney's office, that office denied having any record or knowledge of receiving such footage. (*See id*. at ¶ 54). Rather, the footage was destroyed by Livergood and/or Petrus. (*See id*. at ¶¶ 56-58). To assist with the prosecution of Kessler, Petrus and Livergood contacted then-District Attorney Christine Holman, who based on "an unfair and misleading rendition of the facts" was "duped" into "authoriz[ing] the filing of criminal charges against Plaintiff." (*Id*. at ¶¶ 71-72). The District Attorney was falsely told that Kessler shoved, bumped and had offensive contact with Creasy and that Kessler made

---

[1] The charged offense, although not identified in the Amended Complaint, is properly gleaned from a review of Kessler's criminal docket.

threats towards Creasy. (*See id*. at ¶ 73).

Kessler subsequently received a Summons and he surrendered before a district justice "against his will out of threat of a bench warrant being issued for his physical arrest and being taken into custody." (*Id*. at ¶ 98). When he surrendered, Kessler submitted to fingerprinting and photographing against his will and he was temporarily confined in the law enforcement office until he was processed. (*See id*. at ¶ 99). Kessler was not free to leave during this time. (*See id*. at ¶ 100). Bail was set[2] and restrictions were placed on Kessler, including that he appear at court proceedings under the threat of a warrant being issued if he did not appear. (*See id*. at ¶ 102). While the charge was pending, Kessler was not free to leave the jurisdiction or move out of state. (*See id*. at ¶ 105).

Kessler pled not guilty to the charge. (*See id*. at ¶ 108). The matter proceeded to a jury trial in August 2016. (*See id*. at ¶ 109). On August 24, 2016, the jury returned a unanimous not guilty verdict. (*See id*. at ¶ 110).

In view of the foregoing, Kessler commenced this action on December 5, 2017 against the Borough, Petrus, Livergood, and Creasy. (*See* Doc. 1, *generally*). Kessler filed an Amended Complaint on January 23, 2018. (*See* Doc. 12, *generally*). Therein, Kessler asserts claims against Petrus, Livergood, Creasy, and the Borough for the violation of his rights under the Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985. (*See id*.). Kessler also raises state law claims for "false arrest/false imprisonment, intentional and negligent infliction of emotional distress, and abuse of process/malicious prosecution." (*Id*.).

Defendants moved to dismiss the Amended Complaint on February 5, 2018. (*See* Doc. 14, *generally*). That motion has now been fully briefed and is ripe for disposition.

---

[2]     According to the criminal docket, unsecured bail was set at $10,000.00. (*See* Doc. 15, Ex. "B").

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## III. Discussion

Defendants cite several grounds for dismissal of Kessler's federal law causes of action in the Amended Complaint. First, Defendants argue that Kessler's malicious prosecution and false arrest claims fail because he does not plead that he was seized. Second, Defendants assert that the false arrest and malicious prosecution are deficient as a matter of law because they had probable cause to charge Kessler with a violation of 18 Pa. C.S.A. 2709(a)(4). Third, the malicious prosecution claim fails, Defendants

suggest, because the charges were pursued by the District Attorney. Fourth, Defendants contend that the allegations in the Amended Complaint fail to plead a plausible Fourteenth Amendment fabricated evidence claim. Fifth, Defendants assert that Kessler's *Monell* claim is not viable because he does not identify a custom or policy sufficient to support a finding of municipal liability. Finally, individual Defendants seek dismissal of the federal claims based on qualified immunity. I will address these arguments in order.

## A. Seizure

Defendants first move for dismissal of Kessler's malicious prosecution and false arrest claims[3] on the basis that Plaintiff was not seized as a matter of law. The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Third Circuit has adopted the "continuing seizure" interpretation of the Fourth Amendment. *See Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citing *Albright v. Oliver*, 510 U.S. 266, 277-80, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (Ginsburg, J., concurring)). Specifically, "[w]hen the state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment." *Id*. at 321-22. Under the "continuing seizure" interpretation, "'pre-trial restrictions of liberty aimed at securing a suspect's

---

3      To state a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff
       must satisfy each of the following elements: "(1) the defendants initiated a
       criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the
       proceeding was initiated without probable cause; (4) the defendants acted
       maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the
       plaintiff suffered deprivation of liberty consistent with the concept of a seizure as
       a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d
       Cir. 2009) (en banc) (quotations omitted). The elements of a § 1983 false arrest
       claim under the Fourth Amendment are: "(1) that there was an arrest; and (2) that
       the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700
       F.3d 675, 680 (3d Cir. 2012) (citations omitted).

court attendance are all 'seizures' . . . because the difference between detention in jail, release on bond, and release subject to compliance with other conditions is in the degree of restriction on the individual's liberty, not in the kind of restriction." *Black v. Montgomery Cnty.*, 835 F.3d 358, 367 (3d Cir. 2016) (quoting *Schneyder*, 653 F.3d at 320) (alterations omitted). One district court in this Circuit recently observed the "tension among the decisions of the Court of Appeals for the Third Circuit as to the necessary conditions for a constitutionally significant seizure absent a formal arrest and booking." *Richter v. Pa. State Police*, No. 15-775, 2018 WL 1427088, at \*3 (W.D. Pa. Mar. 22, 2018) (Bissoon, J.).

In *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998), the Third Circuit found that the plaintiff was seized post-indictment because he had to post a $10,000.00 recognizance bond, attend court hearings, contact pretrial services on a weekly basis, and was prohibited from traveling outside of New Jersey and Pennsylvania. Reiterating that it had "adopt[ed] a broad approach in considering what constitutes a seizure," the *Gallo* court "conclude[d] that the combination of restrictions imposed upon [the plaintiff], because they intentionally limited his liberty, constituted a seizure." *Id.* at 224-25.

On the other hand, in *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005), the Third Circuit found there was "no seizure significant enough to constitute a Fourth Amendment violation in support of a Section 1983 malicious prosecution action." Unlike the restrictions in *Gallo*, the plaintiffs in *DiBella* "were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services. Their liberty was restricted only during the Municipal Court trials and the Fourth Amendment does not extend beyond the period of pretrial restrictions." *Id.*

Most recently, the Third Circuit in *Black* found that the plaintiff sufficiently alleged that her liberty was intentionally restrained by the defendants. *See Black*, 835 F.3d at 367-68. There, after being accused of committing arson in Pennsylvania, the

6

plaintiff flew from her home in California for her arraignment after the issuance of an arrest warrant. *See id*. at 367. She spent more than an hour being fingerprinted and photographed at the police station during which "she was clearly not free to leave." *Id*. The plaintiff was also required to post unsecured bail of $50,000.00. *Id*. at 367-68; *see also id*. at 363 n.3 (explaining that "[r]elease on unsecured bail bond means 'release conditioned upon the defendant's written agreement to be liable for a fixed sum of money if he or she fails to appear as required or fails to comply with the conditions of the bail bond. No money or other form of security is deposited.' Pa. R. Crim. P. 524(C)(3)."). The plaintiff was further informed that the bond would be forfeited if she did not attend all court proceedings, which "compell[ed] her to travel across the United States to attend pre-trial hearings," at least a dozen times. *Id.* at 368. The *Black* court likewise made clear that the seriousness of the charges against the plaintiff demonstrated that she was "hardly freed from the state's control upon her release from a police officer's physical grip." *Id*. (quotation and alteration omitted). Thus, although the Third Circuit reiterated that it was continuing to leave "'open the possibility that some conditions of pre-trial release may be so insignificant as to not implicate constitutionally protected liberty interests,'" *id*. at 367 n.7 (quoting *Schneyder*, 653 F.3d at 321 n.12), the court found that under the totality of the circumstances alleged, the plaintiff sufficiently plead that she was seized within the meaning of the Fourth Amendment. *See id*. at 368.

In view of *Black*, *DiBella*, and *Gallo*, Kessler plausibly pleads that he was seized under the Fourth Amendment. Facts pled supporting the existence of a seizure include, *inter alia*: (1) Kessler was compelled to surrender out of threat of the issuance of a bench warrant; (2) when he surrendered he was fingerprinted, photographed, and temporarily confined in the law enforcement office during processing; (3) he posted unsecured bail of $10,000.00; (4) he was compelled to attend numerous court proceedings under the threat that his bail would be revoked and he would be incarcerated if he did not appear; and (5) he was not free to leave Pennsylvania or

move out of state during the pendency of the criminal case. (*See* Doc. 12, ¶¶ 98-107). Of course, like in *DiBella*, Kessler alleges he was only issued a summons, (*see* Doc. 12, ¶ 98), and unlike in *Black*, Plaintiff was charged with only a misdemeanor and he apparently did not need to travel a great distance to defend himself. (*See id.*, *generally*). Nonetheless, at the present stage of these proceedings, Kessler has provided sufficient factual matter to support a plausible Fourth Amendment seizure. *See, e.g.*, *Simpson v. Coatesville*, No. 10-100, 2011 WL 570013, at *8 (E.D. Pa. Feb. 15, 2011) (finding the plaintiff sufficiently plead that he was seized when he was "released on $2,500 unsecured bail and that there were many hearings in his criminal case before trial."); *accord Richter*, 2018 WL 1427088, at *4-5 (Fourth Amendment protections triggered where the plaintiff voluntarily surrendered to local magisterial district judge, posted $25,000.00 unsecured bond, and appeared in court at least six times for criminal proceedings during a one year period); *Cosby v. Magnotta*, No. 10-1881, 2014 WL 694998, at *6 (M.D. Pa. Feb. 24, 2014) (denying summary judgment on seizure issue where the plaintiff was required to post $10,000.00 in unsecured bail and was not released until he was fingerprinted and photographed).

## B. Probable Cause

Defendants next claim that Kessler's malicious prosecution and false arrest causes of action fail because probable cause existed to initiate criminal proceedings. The probable cause analysis is the same for § 1983 claims for false arrest and malicious prosecution. *See, e.g.*, *Wright v. City of Phila.*, 409 F.3d 595, 604 (3d Cir. 2005); *Meketa v. Kamoie*, 955 F. Supp. 2d 345, 364-65 (M.D. Pa. 2013).

"The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (internal quotation marks and citation omitted). "Probable cause exists if there is a fair probability that the person committed the crime at issue. Put another way, probable cause to arrest

exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (quotations, citations, and alteration omitted). "[A]n arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). Instead, a plaintiff may prevail "in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Id*. at 786-87 (citations and quotation marks omitted).

Kessler sufficiently alleges that Defendants lacked probable cause to file the criminal charge against him. Specifically, Kessler contends that Defendants Petrus and Livergood prepared a criminal complaint and affidavit of probable cause with false information concerning the incident that occurred between Kessler and Creasy on August 19, 2015. (*See* Doc. 12, ¶¶ 68-70). Petrus and Livergood are alleged to have known that these documents contained incorrect and untrue information, including that Kessler shoved, bumped, and had offensive contact with Creasy, when it was actually Creasy that made contact with Kessler in an attempt to provoke a physical altercation. (*See id*. at ¶¶ 73, 75). Further, Defendants destroyed the video surveillance footage of the incident prior to providing it to the District Attorney because it confirmed the occurrence of the events in the manner described by Kessler and not as falsely reported in the criminal complaint and affidavit of probable cause. (*See id*. at ¶¶ 49-50, 53-58, 78-79). On the facts as pled, Kessler has stated that the criminal charges were filed against him without probable cause. *See*, *e.g.*, *Gallo*, 161 F.3d at 220 n.2 ("Decisions have recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed

material information from, prosecuting authorities."). Restated, without the materially false statements provided in Petrus' affidavit and the criminal complaint, there would be no facts to establish the existence of probable cause to charge Kessler with a crime. Kessler adequately pleads that the charge was brought against him without probable cause.

## C.    Initiation of Prosecution by the District Attorney

Kessler's malicious prosecution claim is also challenged on the basis that the District Attorney, not Defendants, initiated the prosecution at issue. This, though, does not defeat Kessler's malicious prosecution claim.

"It is settled law that 'officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions.'" *Halsey v. Pfieffer*, 750 F.3d 273, 297 (3d Cir. 2014) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004)); *Thomas v. City of Phila.*, 290 F. Supp. 3d 371 (E.D. Pa. 2018) ("Police officers (as opposed to prosecutors) may be liable for malicious prosecution if they conceal or misrepresent material facts to the prosecutor."). "[A]n officer is liable if he fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute." *Id*. This is precisely what Kessler alleges in the Amended Complaint - Defendants failed to disclose (and in fact destroyed) the exculpatory surveillance footage to the District Attorney and instead provided her with false reports of the incident that occurred on August 19, 2015. Because such conduct if proven true could demonstrate that "the officers influenced or participated in the decision to institute criminal proceedings," *Halsey*, 750 F.3d at 297, Kessler's Fourth Amendment malicious prosecution will not be dismissed.

**D.    Fabrication of Evidence**

In *Black*, the Third Circuit considered "whether a plaintiff may pursue a fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment even if the plaintiff was never convicted." *Black*, 835 F.3d at 369. The *Black* court answered that question in the affirmative, holding that "a stand-alone fabrication of evidence claim can proceed if there is no conviction." *Id.* Accordingly, a criminal defendant may advance such a claim against state actors under the Fourteenth Amendment "if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would have not have been criminally charged." *Id.* at 371. Under that standard, a plaintiff must "draw a meaningful connection between [his] particular due process injury and the use of fabricated evidence against her." *Id.* at 372. The *Black* court reminded, however that "there is a notable bar for evidence to be considered fabricated. . . . [T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong. There must be persuasive evidence supporting a conclusion that the proponents of the evidence are aware that evidence is incorrect or that the evidence is offered in bad faith." *Id.* (internal quotations and citations omitted).

Kessler will be permitted to proceed with his Fourteenth Amendment claim. In the Amended Complaint, Kessler alleges that he was criminally charged as a result of a fabricated story by Defendants regarding the incident that occurred on August 19, 2015. Kessler further avers that Defendants destroyed the video surveillance footage that would have confirmed that the events of that day did not occur as described to the District Attorney. For purposes of the instant motion, Kessler has pled facts sufficient to state a claim upon which relief can be granted. *See, e.g.*, *Grubbs v. Miller*, No. 17-555, 2018 WL 446520, at *5 (W.D. Pa. Jan. 16, 2018) (denying motion to dismiss fabrication of evidence claim "given Plaintiff's straight forward allegation that her arrest was predicated upon a fabricated story of harassment and intimidation").

**E.     *Monell***

Defendants next seek dismissal of the *Monell* claim in Count Two of the Amended Complaint. "[M]unicipalities and other local government units [are] to be included among those persons to whom § 1983 applies," and municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In *Monell*, the Supreme Court held that a municipality will not be found liable for the unconstitutional acts of a state actor unless the conduct that caused the harm was pursuant to a government policy, custom, or practice. 436 U.S. at 690-91, 98 S. Ct. 2018. A § 1983 claim against a municipality thus requires a plaintiff to: (1) identify a policy or custom that deprived him of a federally protected right; (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation; and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *Bell v. City of Phila.*, 629 F. App'x 214, 216 (3d Cir. 2015). The Third Circuit has explained that a municipality can be liable for the torts of its employees in one of three ways:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, *Jett v. Dallas Independent School District*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988).

*McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).

Defendants' motion to dismiss Count Two of the Amended Complaint will be denied. Among other allegations, Kessler alleges that he was a vocal critic of Borough Council and Councilwoman Karen Domalakes, and that prior to the filing of criminal charges against him, Borough Council was aware of the actions of Creasy, Livergood, and Petrus. (*See* Doc. 12, ¶¶ 62-63). The Amended Complaint further suggests that Borough Council approved of Defendants' fabrication of evidence and the filing of a false charge against Kessler. (*See id*. at 64-66). Kessler additionally alleges that a number of significant events pertinent to his claims were taken by Livergood, the Borough Chief of Police, *i.e.*, a municipal decisionmaker. *See Martucci v. Borough*, No. 17-1671, 2018 WL 1641232, at *11 (M.D. Pa. Apr. 5, 2018). While Kessler may ultimately be unable to establish his *Monell* claim at a later stage of this case, at present he has provided sufficient factual matter to state a *Monell* claim that is plausible on its face. *See id*. at *12.

## F.    Qualified Immunity

Lastly, individual Defendants Petrus, Livergood, and Creasy assert that they are entitled to qualified immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, - - - U.S. - - -, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)). The Third Circuit has remarked that qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Blackhawk v. Pa.*, 381 F.3d 202, 215 (3d Cir. 2004). "In considering the applicability of qualified immunity, courts engage in a two-pronged examination." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). "First, a court must decide 'whether the facts that a plaintiff has shown make out a violation of a constitutional right.' And second, the court must

determine 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.' Courts may begin their consideration with either prong." *Id*. (alteration omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

"To be clearly established, a right must be sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'" *Reichle*, 566 U.S. at 664, 132 S. Ct. 2088 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). This means "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 135 S. Ct. at 2044. Essentially, "in light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). This may be the case "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct violated constitutional rights." *Id*. at 740, 122 S. Ct. 2508 (citation omitted).

At present, it is premature to determine if individual Defendants had probable cause to arrest Kessler, whether he was maliciously prosecuted/falsely arrested, or whether a finding of qualified immunity is warranted. *See*, *e.g.*, *Martucci*, 2018 WL 1641232, at *12. "Although it is important to resolve qualified immunity questions at the earliest possible stages of litigation," *Phillips v. County of Allegheny*, 515 F.3d 224, 242 n.7 (3d Cir. 2008), "[a] decision as to qualified immunity is premature when there are unresolved disputes of historical facts relevant to the immunity analysis." *Id*. As such, "'it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.'" *Williams v. Papi*, 30 F. Supp. 3d 306, 314 (M.D. Pa. 2014) (quoting *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009)); *accord Thomas v.*

*Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) ("qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."). The factual record in the matter *sub judice* is insufficiently developed to conduct a qualified immunity analysis, rendering a decision on qualified immunity premature at the pleadings stage here. *See, e.g.*, *Benedict v. Borough of Malvern*, No. 15-6462, 2016 WL 3059540, at *3 (E.D. Pa. May 31, 2016); *accord Olson v. Ako*, - - - F. App'x - - -, 2018 WL 1391708, at *4 (3d Cir. Mar. 20, 2018) (reversing denial of qualified immunity on a motion to dismiss where there was a "detailed factual record" before the district court that had been provided in response to its prior decision granting a Rule 12(e) motion for a more definite statement). In addition, Kessler, for reasons previously explained, has stated viable claims under the Fourth and Fourteenth Amendments. And, the rights protected "under the Fourth Amendment were sufficiently clear that [individual Defendants] should have know that criminal charges and prosecution based on evidence [they] knew to be false violated those rights." *Martucci*, 2018 WL 1641232, at *13. The same is true about the initiation of criminal proceedings without probable cause. *See id*. At this stage of the proceedings, therefore, it does not appear that qualified immunity exists as a matter of law based on the face of the Amended Complaint. *See id*. Accordingly, Defendants' motion to dismiss based on qualified immunity will be denied, but individual Defendants can raise that defense again after discovery is conducted and the factual record is fully developed. *See id*.

## IV. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be denied. An appropriate order follows.


May 8, 2018                          /s/ A. Richard Caputo
Date                                 A. Richard Caputo
                                     United States District Judge